IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAQUENTUS CHOICE, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | 3:05-CV-552-P |
| VS. | § | |
| | § | |
| WERNER ENTERPRISES, INC., | § | |
| AND DRIVERS MANAGEMENT, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Now before the Court is Defendants' Joint Motion for Summary Judgment as to All Claims, filed February 17, 2006. Plaintiff responded on March 9, 2006, and Defendants replied on March 24, 2006. For the reasons stated below, the Court hereby GRANTS Defendants' Joint Motion. Plaintiff's claims against Defendants are therefore DISMISSED WITH PREJUDICE.

### I. Background

This case arises out of Plaintiff's application for employment as an Over the Road (hereinafter "OTR") driver with Defendant Drivers Management, Inc.[1] In 1990, Plaintiff suffered a workplace accident that resulted in the amputation of four fingers on his left hand and three fingers on his right hand. (Pl.'s App. at 2–3: Choice Dep. 21:8–22:7.) Fourteen years later, he completed truck driving school and received a Class A driver's license from the State of Texas.[2] (Pl.'s App.

---

[1] Defendant Werner Enterprises, Inc., is Driver Management's parent company.

[2] Under Texas law, a Class A driver's license authorizes a person to drive "a vehicle with a gross vehicle weight rating of 26,001 pounds or more" or "a combination of vehicles that has a gross combination weight rating of 26,001 pounds or more, if the gross vehicle weight rating of any vehicle or vehicles in tow is more than 10,000 pounds." Tex. Transp. Code Ann. § 521.081 (Vernon 1999).

at 17: Choice Aff. ¶ 2.)  He was then recruited by Defendants to work their regional trucking route based out of Dallas.  (*Id.*)  Defendants extended Plaintiff a conditional offer of employment pending the completion of its orientation program.  (Def.'s App. at 7–8.)

Plaintiff attended the orientation program at Defendants' Dallas terminal on August 23, 2004.  Because OTR drivers must meet all applicable Department of Transportation (hereinafter "DOT") and Motor Carrier Safety regulations, part of the orientation program involved a DOT physical examination.  (Def.'s App. at 5, 7.)  Drivers Management contracted with Dr. Michael C. Boothe, M.D., to provide medical examinations to all of the applicants attending the orientation. (*Id.* at 3: Frey Aff. ¶ 7.)  Dr. Boothe has conducted DOT medical examinations for 14 years and is familiar with the applicable regulations.  (*Id.* at 17: Boothe Aff ¶ 2.)

Based on his examination, Dr. Boothe concluded that Plaintiff did not satisfy the physical qualification standards in 49 C.F.R. § 391.41.  (*Id.* ¶ 5.)  He advised Plaintiff that he could seek a Skill Performance Evaluation certificate (hereinafter "SPE") under 49 C.F.R. § 391.49.  (*Id.* ¶ 6.) Dr. Boothe also gave Plaintiff contact numbers in Fort Worth and Washington, D.C., so that he could request an SPE.  (*Id.*)  As a result of the medical examination, Plaintiff was disqualified from employment as an OTR driver.  (Def.'s App. at 11.)  There is no evidence that Plaintiff applied for an SPE, nor is there any indication in the record that he appealed the result of the medical examination through the appropriate administrative agency.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on September 28, 2004.  (Notice Removal at 9.)  On December 2, 2004, the EEOC issued its Notice of Right to File Civil Action, and Plaintiff filed a claim in state court on February

25, 2005. (*Id.*) Defendants removed the case to this Court on March 18, 2005. (*Id.* at 1.) Through the instant motion, Defendants seek dismissal of all claims.

## II. Legal Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears the burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such an absence. *Celotex*, 477 U.S. at 323. However, all evidence and the reasonable inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). In addition, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). At this point, the nonmovant must provide specific facts that show the case presents a genuine issue of material fact, such that a reasonable jury might return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Id.* at 248–50; *Abbott v. Equity Group*, 2 F.3d 613, 619 (5th Cir. 1993). In other words, conclusory statements, speculation, and unsubstantiated assertions will not suffice to defeat a motion for summary judgment. *Douglass v. United Servs. Auto. Ass'n*, 79

F.3d 1415, 1429 (5th Cir. 1996) (en banc).  If the nonmoving party fails to make a showing

sufficient to establish the existence of an element essential to his case and on which he bears the

burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322–23;

*Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1122 (5th Cir. 1988).  Finally, the

Court has no duty to search the record for triable issues.  *Ragas v. Tennessee Gas Pipeline Co.*, 136

F.3d 455, 458 (5th Cir. 1998).

### III.  Analysis

"The ADA makes it unlawful for an employer to discriminate against 'a qualified individual

with a disability because of the disability of such individual in regard to job application procedures,

the hiring, advancement, or discharge of employees, employee compensation, job training, and other

terms, conditions, and privileges of employment.'"  *Rodriguez v. ConAgra Grocery Prods. Co.*, 436

F.3d 468, 474 (5th Cir. 2006) (quoting 42 U.S.C. § 12112(a)).  "The term 'qualified individual with

a disability' means an individual with a disability who, with or without reasonable accommodation,

can perform the essential functions of the employment position that such individual holds or

desires."  42 U.S.C.A. § 12111(8) (West 2005).

Under DOT regulations, in order to be qualified to drive a commercial motor vehicle, a

person must be "physically qualified to do so" and have "on his person the original, or a

photographic copy, of a medical examiner's certificate that he is physically qualified to drive a

commercial motor vehicle."  49 C.F.R. § 391.41(a).  The regulations specifically define what it

means to be physically qualified and provide a detailed procedure for the medical examiner to follow

in determining whether an individual driver is qualified.  *Id.* §§ 391.41(b), 391.43.  If the person

does not satisfy the physical qualifications set forth in 49 C.F.R. § 391.41, he or she may apply for an SPE pursuant to 49 C.F.R. § 391.49.

In this case, Plaintiff failed the DOT medical examination due to the condition of his hands and did not seek an SPE.  As a result, Defendants maintain that they were prevented from hiring him by federal law.[3]  Plaintiff, however, claims that Defendants failed to tell him about the possibility of obtaining an SPE and did not give him an opportunity to apply for one before disqualifying him from employment.  Plaintiff argues that in doing so Defendants failed to reasonably accommodate his disability.

Having examined the summary judgment evidence, the Court concludes that Plaintiff has failed to establish a genuine issue of fact as to reasonable accommodation.  Defendants have presented considerable evidence that Plaintiff was actually encouraged to obtain an SPE, and Plaintiff has failed to respond with evidence establishing the existence of a fact issue.  In his affidavit, Dr. Boothe testified that he has a "regular practice, habit, and routine" of notifying potential drivers who do not meet the physical qualification standards of the possibility of obtaining an SPE. (Def.'s App. at 17: Boothe Aff. ¶ 6.)  He also testified that he advised Plaintiff to seek an SPE and provided him with contact numbers in Ft. Worth and Washington. (*Id.*)  There is substantial documentation supporting Dr. Boothe's claims.  The Medical Examination Report, signed the date of the physical exam, contains a handwritten note stating: "I've advised driver to seek a Skill Performance Evaluation & given him phone numbers in FTW & Washington D.C. to

---

[3]  "Under Title I of the ADA, employers may justify their use of 'qualification standards . . . that screen out or tend to screen out or otherwise deny a job or benefit to an individual with a disability,' so long as such standards are 'job-related and consistent with business necessity, and . . . performance cannot be accomplished by reasonable accommodation . . . .'" *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 568 (1999) (quoting  42 U.S.C. § 12113(a)). They also have a defense to liability under the ADA where "a challenged action is required or necessitated by another Federal law or regulation." *Id.* at 570 n.16 (quoting 29 C.F.R. § 1630.15(e)).

submit for SPE." (Def.'s App. at 19.)  A separate page of this report contains a handwritten notation at the bottom reading: "Have given driver info on submitting for SPE."  (*Id.* at 20.)

Plaintiff disputes this testimony, claiming that Dr. Boothe did not mention the SPE and that the handwritten note was not on the Medical Examination Report when he signed it.  (Pl.'s App. at 12–13, 18: Choice Dep. 74:18–75:20, Choice Aff. ¶ 3.)  Plaintiff's self-serving testimony, however, does not create a fact issue in light of the substantial evidence presented by Defendants.  It is entirely possible that Plaintiff may simply not remember being told about the SPE.  In regards to the handwritten comments on the page containing Choice's signature, Dr. Boothe may have inserted them after Plaintiff signed the form.  Regardless, the comments still corroborate Dr. Boothe's testimony that Plaintiff was told about the SPE.[4]  The question at the summary judgment stage is "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quoting *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1872)).  Here, the Court concludes that no reasonable juror could find for the plaintiff on the issue of reasonable accommodation.

In sum, the summary judgment evidence shows that Defendants advised Plaintiff to obtain an SPE, and he failed to do so.  If Plaintiff had obtained one and Defendants still refused to hire him, this would be a different case.  As it stands, the record indicates that Defendants followed the applicable DOT regulations, and the ADA imposes no liability for doing so.

---

[4] While Plaintiff's response alludes to the possibility of forgery or fabrication of evidence, he produces no evidence in support of this assertion.  The Court therefore takes the handwritten comments at face value.

**Order**
**3:05-CV-0552-P**
**Page 6 of 7**

**Conclusion**

For the reasons stated above, the Court hereby GRANTS Defendants' Motion for Summary

Judgment.  Plaintiff's claims against Defendants are hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

SIGNED this 21st day of April 2006.


_____

JORGE A. SOLIS

UNITED STATES DISTRICT JUDGE